<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NESTOR FRANCISCO, <br><br> Plaintiff, <br><br> v. <br><br> NEW JERSEY DEPARTMENT OF CORRECTION, *et al.*, <br><br> Defendants. | Civil Action No. 23-22775 (GC) (JBD) <br><br> <u>**OPINION**</u> |

<u>**CASTNER, District Judge**</u>

**THIS MATTER** comes before the Court on the filing of an Amended Complaint (ECF No. 18) by *pro se* Plaintiff Nestor Francisco, the Court's obligation to screen the Amended Complaint under 28 U.S.C. § 1915(e)(2)(B), and Plaintiff's filing of a motion to amend his complaint (ECF No. 19 ("Motion to Amend"). Plaintiff, a convicted and sentenced state prisoner currently confined at the New Jersey State Prison ("NJSP") in Trenton, New Jersey, asserts claims pursuant to 42 U.S.C. § 1983 ("§ 1983"). (ECF No. 18 at 2.) Previously, on screening Plaintiff's initial Complaint (ECF No. 1 ("Complaint")), the Court dismissed with prejudice the federal claims against Defendant New Jersey Department of Corrections ("NJDOC"), granted Plaintiff leave to submit an amended complaint, and declined to exercise supplemental jurisdiction over Plaintiff's state law claims. *Francisco v. N.J. Dep't of Corr.*, No. 23-22775, 2024 WL 4117394 (D.N.J. Sept. 9, 2024) ("September 9, 2024 Opinion"); (ECF No. 12 ("September 9, 2024 Order")).

The Clerk shall reopen this case so that Plaintiff's Amended Complaint may be screened. For the reasons set forth below, the claims alleged in the Amended Complaint are **DISMISSED**

without prejudice for failure to state a claim for relief. Plaintiff shall be given an opportunity to submit a proposed Second Amended Complaint to the extent he can cure the deficiencies described in this Opinion should he elect to do so. The Motion to Amend is **DENIED** as moot.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In his Amended Complaint, Plaintiff names twenty-five Defendants.[1]  (ECF No. 18 at 5-6, 9-17.) Plaintiff alleges that he is a native Spanish speaker with "limited proficiency" in English and accordingly must rely on the prison's resources to access legal materials and defend himself in "ongoing legal proceedings." (*Id.* at 18.) The NJDOC has posted signs throughout the facility, claiming to offer translation and interpretation services to non-English speaking inmates; however, no such services have been made available to Plaintiff. (*Id.*) Plaintiff has submitted several written inquiries and grievances requesting translation and interpretation services to help him understand legal documents and court proceedings, and these submissions have been either ignored or inadequately addressed. (*Id.*) "In response to one of Plaintiff's requests, prison officials informed Plaintiff that providing translation services would cost over $30,000, an exorbitant amount that Plaintiff cannot afford." (*Id.*) Furthermore, NJSP does not provide any Spanish-speaking paralegals or staff able to assist Plaintiff with his legal needs, nor does the library provide Spanish

---

[1]      Plaintiff lists the following individuals as Defendants: (1) Jessie Glover, Education Supervisor; (2) Nina Washington, Education Supervisor; (3) Rakima Stokes Little, Education Supervisor; (4) Amy Emrich, Administrative Assistant; (5) Jonathan Gramp, Administrator; (6) Fathom Borg; (7) David Richards, Administrator; (8) Peter Simpson; (9) Jessica McDuffie, Administrator's Office employee; (10) Cindy Ford, Central Office employee; (11) Garyn Nathan, Central Office employee; (12) Celeste Thatcher, Education Supervisor; (13) Joyce Rufolo-Prior; (14) Anthony Gadecki; (15) Anthony Gangi, Administrator; (16) Kyle Yaindi, Central Office employee; (17) Tiffany Fair-weather, Central Office employee; (18) Omar Mendoza, Mail Room and Property Supervisor; (19) Craig Sears, Major; (20) Victoria Herring, Mail Room employee, (21) Kevin Besek, Mail Room Supervisor; (22) Derrick Bodtmann, Administrative Assistant; (23) T. Miller; (24) John Burns, Education Teacher; and (25) Daniel Williams, Education Teacher. (ECF No. 18 at 5-6, 9-17.) Ford, Nathan, Yaindi, and Fair-weather work at the "Central Office" in Trenton, New Jersey; the other Defendants are employed at NJSP. (*Id.*).

law books, legal resources, or computer programs capable of translating legal documents.  (*Id.*) Plaintiff requested help from teachers and prison staff, but he was told "This is America, we speak English."  (*Id.* at 19.)  Such statements indicate discriminatory treatment based on Plaintiff's language and national origin."  (*Id.*)

According to Plaintiff, the lack of translation and interpretation services limits his access to the courts, violating his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution, and constitutes discrimination based on national origin and language, in violation of the Equal Protection Clause of the Fourteenth Amendment.  (*Id.* at 19.) Furthermore, Plaintiff's discovery materials were provided on a CD, which prison officials allowed other inmates to review, thereby violating his privacy and due process rights.  (*Id.* at 18.) As a result of Defendants' actions and omissions, Plaintiff has suffered significant harm, including an inability to adequately prepare and participate in his legal case, emotional distress, and feelings of exclusion.  (*Id.* at 19.)

The multiple Defendants named in Plaintiff's amended pleading can be broadly grouped into three categories: (1) administrative and supervisory personnel, who allegedly failed to respond adequately to Plaintiff's requests and grievances concerning the provision of adequate legal resources and services (*e.g.*, translation services and access to legal materials) and thereby failed to ensure that Plaintiff received adequate resources and services under the applicable policies and laws; (2) educational supervisors and teachers, who allegedly failed to provide Plaintiff with adequate educational services, including access to legal resources (*e.g.* translation services), "compelled the Plaintiff to send his USB flash drive home," and "mad[e] racial  remarks;" and (3) mailroom and property supervisors and a mailroom and property worker who allegedly "forced Plaintiff to send his CD containing legal discovery materials home, claiming that Plaintiff was no

longer allowed to keep it in the law library," and then upheld this determination. (*Id.* at 5-6, 9-17.) Furthermore, Plaintiff enumerates the dates of the alleged violations. (*Id.*) For instance, Little's alleged violations "occurred on 5-15-2019, 2-19-2020, 2-24-2020, 1-12-2021, 1-15-2021, 2-08-2021, 4-5-2021, 9-1-2021, 9-13-2021." (*Id.* at 9.)

Plaintiff requests a declaration that Defendants' actions and omissions violated Plaintiff's federal constitutional rights; an injunction requiring Defendants to provide adequate translation and interpretation services to non-English-speaking inmates, translation software at the law library to assist in translating legal documents, discovery materials, and legal cases, and bilingual paralegals; compensatory damages for the harm suffered by Plaintiff due to Defendants' actions, including emotional distress and interference with his legal rights; and punitive damages for intentional and discriminatory conduct. (*Id.* at 7.)

In his original Complaint, dated October 27, 2023, and docketed on November 28, 2023, Plaintiff named the NJDOC as the sole Defendant. (ECF No. 1 at 1, 4.) Plaintiff asserted jurisdiction under § 1983. (*Id.* at 4.) Plaintiff's "Statement of Claims" and descriptions of what Defendant did or did not do that violated his constitutional rights, the steps taken to seek relief, from whom relief was sought, the results, and the relief sought were all in Spanish. (*Id.* at 4-6.)

On February 1, 2024, the Court administratively terminated this matter and ordered that, if Plaintiff wishes to reopen this case, he shall submit a complete application to proceed *in forma pauperis* ("IFP") or pay the full filing and administrative fee within 30 days. (ECF No. 3 at 2–3.) On April 8, 2024, the Court denied Plaintiff's requests to reopen this matter and instead provided him another opportunity to pay the fee or submit a complete IFP application. (ECF No. 6 at 2–3.) In an Order entered on May 1, 2024, the Court denied Plaintiff's IFP application (ECF No. 7) because the account statement was not certified by a prison official. (ECF No. 8 at 2–3.) Plaintiff

was provided an opportunity to submit a certified account statement or pay the filing fee within 30 days if he wished to reopen this case. (*Id.*)  On June 4, 2024, Plaintiff submitted an IFP application, which included a certified account statement. (ECF No. 9.)

On September 9, 2024, the Court granted Plaintiff's IFP application and ordered the Clerk to file the Complaint. (ECF No. 12 at 1.)  The Court dismissed the claims against the NJDOC with prejudice because it was not a proper defendant under § 1983. *See Francisco*, 2024 WL 4117394, at *2.  The Court provided Plaintiff leave to submit an amended complaint within 45 days naming the proper defendant or defendants. *Id.*  As to any state law claims, the Court declined supplemental jurisdiction. *Id.*

Plaintiff's Amended Complaint, dated October 13, 2024, was docketed on October 24, 2024. (ECF No. 18.)  Plaintiff simultaneously filed a motion to amend his Complaint. (ECF No. 19.)

## II.    **STANDARD OF REVIEW**

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner is proceeding IFP. *See* 28 U.S.C. § 1915(e)(2)(B).  The PLRA directs district courts to *sua sponte* dismiss claims (i) that are frivolous or malicious, (ii) that fail to state a claim upon which relief may be granted, or (iii) that seek monetary relief from a defendant who is immune from such relief. *See id*.

The screening assessment of whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter,

accepted as true, 'to state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v, Twombly*, 550 U.S. 544, 570 (2007)).  At this early stage of the litigation, the Court accepts the facts alleged in the *pro se* Amended Complaint as true, draws all reasonable inferences in Plaintiff's favor, and asks only whether the pleading, liberally construed, contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678; *see also Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (stating that courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements" (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).

## III.   DISCUSSION

### A.   Motion to Amend

Plaintiff moves for permission to amend his original Complaint.  (ECF No. 19 at 1.) However, in its September 9, 2024 Opinion and Order dismissing with prejudice Plaintiff's federal claims against the NJDOC and declining to exercise jurisdiction over any state law claims asserted in his Complaint, the Court granted Plaintiff leave to submit an amended complaint within 45 days. *See Francisco*, 2024 WL 4117394, at *1.  Plaintiff's Complaint was filed on October 13, 2024, within the applicable 45-day period.  *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) (indicating that a *pro se* prisoner's submission is deemed filed at the moment he delivers it to

prison officials for mailing to the district court).  Accordingly, the Court accepts Plaintiff's

Amended Complaint as timely and denies Plaintiff's Motion to Amend as moot.

### B.    Plaintiff's § 1983 Claims

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress, except
> that in any action brought against a judicial officer for an act or
> omission taken in such officer's judicial capacity, injunctive relief
> shall not be granted unless a declaratory decree was violated or
> declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right

secured by the Constitution or laws of the United States, and second, that the alleged deprivation

was committed or caused by a person acting under color of state law.[2]  *See Harvey v. Plains Twp.*

*Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011).

The Court construes Plaintiff's Amended Complaint as alleging the following claims under

§ 1983: (1) a claim for denial of access to the courts pursuant to the First Amendment and the Due

Process Clause of the Fourteenth Amendment; (2) a related claim of discrimination under the

Equal Protection Clause of the Fourteenth Amendment; (3) a due process property claim related

to his inability to retain legal materials; and (4) a privacy claim related to other prisoners being

---

[2]    Although he was granted leave to reassert any state law claims, Plaintiff does not allege
any claims under state law in his Amended Complaint.  *See Francisco*, 2024 WL 4117394, at *2
& n.1.

provided access to his legal documents.[3]  The Court concludes that the Amended Complaint fails to allege sufficient factual content to state a facially plausible claim against Defendants.

### 1.    Access to the Courts

Inmates maintain a "fundamental constitutional right of access to the courts," embodied in the First and Fourteenth Amendments.  *Lewis v. Casey*, 518 U.S. 343, 346 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)).  Convicted prisoners may only proceed on access-to-the-courts claims in two situations: "challenges (direct or collateral) to their sentences and challenges involving conditions of confinement."  *Prater v. City of Phila*, 542 F. App'x 135, 138 (3d Cir. 2013) (per curiam) (citation omitted).

There are two general types of access-to-the-courts claims.  Forward-looking claims involve official action that "frustrates a plaintiff . . . in preparing and filing suits at the present time."  *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).  "The opportunity has not been lost for all time, however, but only in the short term; the object [of this type of suit] is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed."  *Id*.  In backward-looking claims, the official acts "allegedly have caused the loss or inadequate

---

[3]      The Court assumes for screening purposes that Plaintiff seeks damages against Defendants in their personal capacities.  *See Baker v. Royce*, No. 22-1234, 2022 WL 11804025, at *4 n.5 (D.N.J. Oct. 20, 2022).  Because Plaintiff does not list the NJDOC as a Defendant in his Amended Complaint and this Court dismissed claims against the NJDOC with prejudice, the Court does not read the amended pleading as asserting any claims against the NJDOC.  Finally, the Court does not construe the Amended Complaint as alleging a separate constitutional challenge to the prison's grievance procedures and the supervisory officials' disposition of his administrative inquiries and grievances.  *See Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (indicating that the existence of a prison grievance procedure confers no liberty interest on a prisoner); *Washington v. Crum*, No. 19-1460, 2022 WL 798372, at *10-11 (W.D. Pa. Mar. 16, 2022) (stating that a prisoner cannot recover for defendants' failure to respond to his grievances).

settlement of a meritorious case," the loss of a chance to sue, or the loss of a particular type of relief. *Id.* at 414 (citations omitted).

In both types of cases, however, the plaintiff must identify a "nonfrivolous" or "arguable" underlying claim. *See id.* at 415. Indeed, "the underlying cause of action, whether anticipated or lost, is an element [of an access claim] that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.* This is so because "[a] prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis*, 518 U.S. at 352-53). That is, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). As explained by the Supreme Court, "[b]ecause *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351.

Plaintiff fails to identify a "nonfrivolous" or "arguable" underlying claim that was allegedly lost (or could be lost) as a result of Defendants' alleged conduct. Instead, Plaintiff's Amended Complaint contains several conclusory allegations, alleging, *inter alia*, that, as a native Spanish speaker with limited proficiency in English, he needs translation and other legal services and resources to understand and "defend himself in ongoing legal proceedings;" Defendants' various actions and inactions in failing to provide such services "contributed to" the continued denial of access to the courts; "[t]he lack of translation and interpretation services severely limits

Plaintiff's ability to access the courts and defend himself in legal proceedings;" and as a result, "Plaintiff has suffered significant harm, including an inability to adequately prepare and participate in his legal case." (ECF No. 18 at 5-6, 9-19.) According to the Amended Complaint, Mendoza forced Plaintiff to send his CD containing legal discovery materials home, which "deprived Plaintiff of essential legal documents necessary for his case, impeding his ability to properly review the evidence and prepare his defense, which violates his right to access the courts." (*Id.* at 14.) Plaintiff likewise indicates that Herring obstructed his access to legal materials, particularly discovery documents, Besek did not permit him to retain his "CD discovery in the law library," thereby hindering his ability to prepare "a proper legal defense," and Glover compelled him to send his USB flash drive home, interfering with his ability to access "necessary" legal materials. (*Id.* at 15-16.)

Such conclusory allegations of injury must be disregarded. *See Wilson*, 57 F.4th at 140 (stating that courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements" (citing *Oakwood Lab'ys LLC*, 999 F.3d at 903)). Although Plaintiff indicates that Defendants' actions have hindered his ability to defend himself in legal proceedings, he does not identify or describe any underlying nonfrivolous claim or cause of action that was, or could be, lost because of the acts of the named Defendants. *See Christopher*, 536 U.S. at 415. Because Plaintiff fails to allege facts plausibly tying an injury to conditions of which he complains, his access-to-the-courts claim is dismissed without prejudice. *See Diaz*, 532 F. App'x at 63.

## 2.    The Equal Protection Clause

Plaintiff indicates that the denial of adequate legal resources and services, particularly interpretation and translation services, violates the Equal Protection Clause. (*See* ECF No. 18 at

19.)  The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  It "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In reviewing an equal protection claim, a court must first determine "whether the alleged state action burdens a fundamental constitutional right or targets a suspect class."  *State Troopers Non-Commissioned Officers Ass'n of N.J. v. New Jersey*, 399 F. App'x 752, 754 (3d Cir. 2010) (citing *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 107 (3d Cir. 2008)).  "If a classification neither burdens a fundamental right nor targets a suspect class, [the court] will uphold it so long as it bears a rational relation to some legitimate end."  *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 213 (3d Cir. 2013) (alteration added) (cleaned up) (quoting *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998)).  However, "a classification [that] trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage . . . must meet the strict scrutiny standard, under which a law must be narrowly tailored to further a compelling government interest."  *Schumacher v. Nix*, 965 F.2d 1262, 1266 (3d Cir. 1992) (cleaned up).

In short, to allege a plausible equal protection claim, "Plaintiff must, at a minimum, plead that he was treated differently than other similarly situated individuals because of his belonging to a protected class or that he was treated differently from a similarly situated individual and the different treatment was without a rational basis."  *Burt v. Bolden*, No. 25-2265, 2025 WL 1065480, at *2 (D.N.J. Apr. 9, 2025) (citing *Wofford v. Lanigan*, No. 14-5723, 2015 WL 9480016, at *5 (D.N.J. Dec. 28, 2015)).

According to Plaintiff, "[w]hen [he] requested help from teachers and staff at the prison, he was told, 'This is America, we speak English," and "[s]uch statements reflect discriminatory

treatment based on Plaintiff's language and national origin." (ECF No. 18 at 19.) Discrimination based on national origin involves a suspect classification. *See Pabon v. McIntosh*, 546 F. Supp. 1328, 1340 (E.D. Pa. 1982). "However—and critical to this case—language proficiency is not interchangeable with national origin or race. Indeed, many courts have found that language is not an immutable characteristic and, thus, does not identify members of a suspect class." *Martinez v. Hall*, No. 17-119, 2020 WL 1069795, at *4 (S.D. Ga. Mar. 5, 2020) (citations omitted), *R&R adopted by* 2020 WL 1816497 (S.D. Ga. Apr. 9, 2020), *aff'd*, 848 F. App'x 864 (11th Cir. 2021).

Plaintiff does not allege sufficient facts to raise a plausible inference that he is the victim of discriminatory treatment based on national origin or another suspect classification. While Plaintiff asserts that two Defendants (Burns and Williams) made "racial remarks" (ECF No. 18, at 17, 19), the use of reprehensible language, including racial slurs, is generally insufficient on its own to constitute a constitutional violation, *see Little v. Cumberland Cnty. Dep't of Corr.*, No. 23-3626, 2023 WL 4993671, at *2 (D.N.J. Aug. 4, 2023). In any event, Plaintiff does not provide the contents of such remarks, or other factual support for his assertion that the discriminatory treatment was based on national origin. *See Wilson*, 57 F.4th at 140 (indicating that conclusory allegations must be disregarded). Ultimately, as the prior case law indicates, "[t]he disparate treatment complained of [such as the denial of translation services] depends upon the language spoken by the prisoner" and "any non-English speaking prisoner is affected whatever his national origin." *Pabon*, 546 F. Supp. at 1340; *see also Martinez*, 2020 WL 1069795, at *4 ("However, the policy Plaintiff challenges concerns only the language of the materials maintains in the CCF library; it does not make any distinction based on race or national origin."").

Because Plaintiff fails to plausibly allege discrimination based on a suspect classification, the Defendants' alleged policies and practices are reviewed for a rational basis. Under rational

basis review, "the challenging party has the burden to negate 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Sanchez v. Brown*, No. 24-11485, 2025 WL 1040414, at *2 (D.N.J. Apr. 8, 2025) (quoting *Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001)).  Plaintiff fails to allege facts raising a reasonable inference that Defendants lacked a rational basis for allegedly denying his requests for "adequate translation and interpretation services," "Spanish-speaking paralegals or staff who can assist Plaintiff with his legal needs," or "Spanish law books, legal resources, or computer programs capable of translating legal documents." (ECF No. 18 at 18-19.)  For example, Plaintiff alleges that prison officials informed him that providing translation services would cost over $30,000. (*Id* at 18.)  Although Plaintiff claims that this cost is "exorbitant," he does not indicate the number of documents or pages he asked to be translated. (*Id.* at 18.)  Similarly, he fails to provide any facts regarding the expense (or availability) of "Spanish law books" and translation software. *See Martinez*, 2020 WL 1069795, at *7 (noting that "no comparable, bilingual legal research alternatives exist").

Additionally, "[t]he identification of another similarly situated individual who was treated differently is . . . a necessary condition for pleading an equal protection claim." *Burt*, 2025 WL 1065480, at *2 (citing *Watlington ex rel. FCI Schuylkill African Am. Inmates v. Reigel*, 723 F. App'x 137, 139 (3d Cir. 2018)).  Plaintiff fails to identify another similarly situated inmate. *See id.* ("Plaintiff has identified no other similarly situated individual, and provides only a conclusory allegation that he was treated differently than others on a racial or other basis.")  Accordingly, the Court dismisses without prejudice Plaintiff's equal protection claim for failure to state a claim.

### 3.    Property Claim

Plaintiff claims that mailroom and property personnel (Mendoza, Herring, and Besek) violated the Due Process Clause of the Fourteenth Amendment because they failed to allow him

to keep his discovery materials in the law library, which forced him to send the CD home. (*Id.* at 14-16.) He similarly alleges that Glover, an education supervisor, "compelled the Plaintiff to send his USB flash drive home." (*Id.* at 16.) However, even if his materials were allegedly confiscated or seized (which they were not), "'unauthorized intentional deprivation of property' by prison officials does not violate the Due Process Clause 'if a meaningful post-deprivation remedy for the loss is available.'" *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). The State of New Jersey provides state prisoners with meaningful post-deprivation remedies in the form of a proceeding under the New Jersey Tort Claims Act and the state prison inmate grievance system. *See Pressley v. Huber*, 562 F. App'x 67, 70 (3d Cir. 2014); *Love v. N.J. Dep't of Corr.*, No. 14-5629, 2015 WL 2226015, at *5 (D.N.J. May 12, 2015). Plaintiff indicates that he has filed grievances regarding his retention of the CD. (*See* ECF No. 18 at 15-16.) "Although these grievances and other complaints Plaintiff has filed have not borne fruit, Plaintiff clearly has access to a remedy system where he may raise his claims, and the . . . loss of his property therefore does not support a Due Process claim." *Gittens v. Pepper*, No. 23-17721, 2024 WL 4799804, at *4 (D.N.J. Nov. 14, 2024) (footnote omitted).

Plaintiff's property claim is dismissed without prejudice.

### 4.    Invasion of Privacy

Finally, Plaintiff claims that "Plaintiff's discovery materials were provided on a CD, which prison officials allowed other inmates to review, violating Plaintiff's privacy rights and due process." (ECF No. 18 at 18.) However, Plaintiff provides no facts to support this conclusory allegation. For instance, he does not indicate which Defendant (or Defendants) "allowed" the other inmates to review the CD or the circumstances under which the inmates were able to access the disc. *See Cheng v. Byrd*, No. 23-5349, 2024 WL 3873945, at *2 (D.N.J. Aug. 20, 2024) ("A

plaintiff cannot refer to all defendants, 'who occupied different positions and presumably had distinct roles in the alleged misconduct' without specifying '*which* defendants engaged in what wrongful conduct.'" (emphasis in original) (citation omitted)).   The Court therefore dismisses Plaintiff's privacy claim without prejudice.

     **5.**     **Section 1997e(e)**

     Section 1997e(e), entitled "Limitation on recovery," provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).   The Third Circuit has interpreted this provision to bar recovery of compensatory damages in such suits in the absence of a showing of physical injury.  *See Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000) (holding that § 1997e(e) barred First Amendment free exercise claims to the extent they sought compensatory damages because the plaintiff made no showing of a physical injury).

     Plaintiff seeks compensatory damages for the harm suffered due to Defendants' actions, "including emotional distress."  (ECF No. 18 at 7.)  Plaintiff's Amended Complaint contains no allegations of any physical injury.  Accordingly, the Court dismisses without prejudice Plaintiff's request for compensatory damages.

**IV.**    <u>**CONCLUSION**</u>

     For the foregoing reasons, the Clerk of Court is directed to reopen this matter to permit screening of the Amended Complaint.   The claims in Plaintiff's Amended Complaint are **DISMISSED** without prejudice.  Plaintiff shall be given an opportunity to submit a proposed Second Amended Complaint within 45 days of the date of entry of this Opinion and the

accompanying Order to the extent he can cure the deficiencies described in this Opinion should he

elect to do so.  Plaintiff's Motion to Amend is **DENIED** as moot.  An appropriate Order follows.


_____
GEORGETTE CASTNER
United States District Judge


Dated: May 30, 2025